IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GREGORY P. BARTUNEK, | ) | |
| | ) | |
| Plaintiff, | ) | 8:16CV69 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| EFRAME, LLC, BRANDON | ) | **AND ORDER** |
| NYFFELER, and MARCO | ) | |
| TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

After his employment was terminated in May 2015, plaintiff Gregory Bartunek, proceeding pro se, filed this action for age discrimination and retaliation against his former employer, eFrame, LLC; his former immediate supervisor, Brandon Nyffeler; and Marco Technologies, LLC, an entity that now serves a number of former eFrame clients after eFrame was dissolved on February 25, 2016. Bartunek, who is over 60 years of age, alleges that he was terminated from his employment because of his age and in retaliation for his complaints to eFrame about what he perceived to be systemic age discrimination within the company. Bartunek brings his claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (Westlaw 2016), and Title VII, 42 U.S.C. §§ 2000e *et seq.*

## I. *Nyffeler's Motion to Dismiss*

Defendant Nyffeler has filed a motion to dismiss (Filing 16) pursuant to Fed. R. Civ. P. 12(b)(6), arguing that because he was not Bartunek's "employer" within the meaning of the ADEA and Title VII, Bartunek's claim against him must be dismissed. I agree.

Title VII only imposes liability upon employers, not individual supervisors or co-workers. *Stanback v. Best Diversified Prod., Inc.*, 180 F.3d 903, 906 (8th Cir. 1999); *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998). The same rule applies to claims brought under the ADEA. *See, e.g.*, *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994); *Robinson v. Bridgeport Pub. Sch.*, No. 8:16CV177, 2016 WL 3920167, at *6 (D. Neb. July 15, 2016) (ADEA claim against plaintiff's co-workers and supervisors dismissed for failure to state a claim upon which relief can be granted); *Coleman v. Jass*, No. 8:13CV82, 2013 WL 4041860, at *2 (D. Neb. Aug. 8, 2013) (co-workers and supervisors may not be held personally liable under ADEA); *Smith v. PayPal, Inc.*, No. 8:12CV226, 2013 WL 2444032, at *7 (D. Neb. June 4, 2013) ("although the Eighth Circuit has not yet decided the issue, most other federal circuit courts of appeals have concluded that individuals may not be held personally liable under the ADEA" (citing cases)); *Rickert v. Midland Lutheran College*, 8:07CV334, 2007 WL 2933229, at *1 (D. Neb. Oct. 5, 2007) (dismissing ADEA claims against individual defendants because they were not "employers" and could not be held individually liable under ADEA); *Feller v. McCarthy*, No. 4:07CV3117, 2007 WL 3204463, at *3 (D. Neb. Oct. 30, 2007) (finding plaintiff's complaint did not state ADEA claim against two individual defendants because complaint did not allege they were plaintiff's "employers" under ADEA).

Therefore, defendant Nyffeler's motion to dismiss (Filing 16) pursuant to Fed. R. Civ. P. 12(b)(6) will be granted, and Bartunek's claims against Nyffeler shall be dismissed.

## II.  Motion to Introduce Evidence

On September 6, 2016—approximately 75 days after the motion for summary judgment filed by Marco Technologies, LLC, became ripe for disposition—Bartunek filed a motion to introduce evidence (Filing 52) in connection with Marco's motion

2

for summary judgment seeking to establish that Marco is holding itself out in the relevant market as eFrame.

Under Fed. R. Civ. P. 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The district court has discretion to admit or exclude materials under this rule, and its refusal to accept untimely filed materials will not be reversed for an abuse of discretion unless the proponent of the materials has made an affirmative showing of excusable neglect.

*Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010) (internal quotation marks and citations omitted).  Here, Bartunek has not made any showing whatsoever of excusable neglect (Filings 52 & 52-1), nor has he filed a motion under Fed. R. Civ. P. 56(d) indicating that he "cannot present facts essential to justify [his] opposition" to Marco's motion for summary judgment such that the court should defer its consideration of the motion or allow Bartunek additional time to take discovery.

Therefore, Bartunek's motion to introduce evidence (Filing 52) must be denied, and the materials attached to such motion shall not be considered.

### III.  Marco's Motion for Summary Judgment

Defendant Marco has filed a motion for summary judgment (Filing 23) on the grounds that (1) Bartunek failed to exhaust his administrative remedies by filing an NEOC or EEOC charge against Marco, nor could he since he was never employed by Marco; (2) any age-discrimination claim Bartunek has against Marco is time-barred; and (3) Marco is not a successor in interest to eFrame. (Filing 24, Def.'s Br. Supp. Mot. Summ. J.)

3

Bartunek argues that "Marco is a defendant in this lawsuit not because the Plaintiff claims that Marco committed Age Discrimination against the Plaintiff, but because Marco is a successor of interest for eFrame, and thus the Administrative Remedies don't apply to them." (Filing 36, Pl.'s Br. Opp'n Mot. Summ. J. at CM/ECF p. 8.)  In other words, Bartunek asserts that because Marco is eFrame's successor, Bartunek did not need to exhaust administrative remedies or bring claims against Marco as a separate entity within a certain time frame.

## A.   *Undisputed Material Facts*

1.     Plaintiff Bartunek was a former employee of eFrame, LLC ("eFrame"). (Filing 1 ¶ 4.) Bartunek's employment with eFrame began on December 12, 2013, and ended on or about May 13, 2015. (Filing 1 ¶ 8; Filing 51, Answer of eFrame ¶¶ 4, 8.)

2.     Bartunek filed a complaint with the Nebraska Equal Opportunity Commission ("NEOC") against eFrame on June 1, 2015. (Filing 36-3 at CM/ECF p. 3.) Bartunek notified the U.S. Equal Employment Opportunity Commission ("EEOC") of his intent to sue eFrame on December 23, 2015. (Filing 1 ¶ 11.)

3.     Bartunek filed his first complaint solely against eFrame in this court on February 9, 2016. (Filing 1.)

4.     Marco Technologies, LLC, ("Marco") is a Minnesota limited liability company with its principal place of business in St. Cloud, Minnesota. (Filing 25-1, Aff. Mrozek ¶ 4.)

5.     On or about February 25, 2016, Marco entered into an Asset Purchase Agreement (the "Agreement") with Premier Bank ("Premier"), a Nebraska banking corporation.  Under the Agreement, Marco purchased a specific tranche of assets from Premier that Premier had acquired from eFrame following a foreclosure of liens

possessed by Premier on eFrame's assets pursuant to the Nebraska Uniform Commercial Code. (Filing 25-1, Aff. Mrozek ¶ 7.)

6.      The Agreement was between Marco as the "buyer" and Premier as the "secured party." The Agreement provided that eFrame was indebted to Premier pursuant to an April 13, 2012, promissory note in the original principal amount of $2,388,096.88; that eFrame granted Premier a security interest in its assets in exchange for the loan; that eFrame defaulted on its obligations to Premier; that Marco agreed to purchase specifically described collateral, which consisted of customer service agreements between eFrame and various of its clients and websites entitled "www.goeframe.com," "www.eframetech.com," and "www.eframemsp.com"; and that "[n]one of the parties hereto intends . . . to assume or become liable for any obligation, liability or indebtedness of eFrame."   (Filing 25-2, Asset Purchase Agreement at CM/ECF pp. 1, 3, 14-19.) Specifically, the parties agreed that "NEITHER SECURED PARTY OR BUYER IS ASSUMING OR SHALL BE LIABLE FOR ANY DEBT, OBLIGATION, RESPONSIBILITY OR LIABILITY OF EFRAME . . . WHETHER KNOWN OR UNKNOWN . . . INCLUDING . . . LIABILITY WITH RESPECT TO . . . EMPLOYMENT."   (Filing 25-2, Asset Purchase Agreement at CM/ECF p. 3 (capitalization in original).)

7.      Pursuant to the Agreement, Marco purchased from Premier all of Premier's rights, title, and interest in various customer contracts and agreements. (Filing 25-1, Aff. Mrozek ¶ 8.)

8.      Pursuant to the Agreement, Premier Bank retained—and Marco excluded and did not purchase—all equipment, accounts receivable, inventory, furniture, fixtures, general intangibles (except as provided in the Agreement), and all other assets or personal property constituting the collateral of Premier.  (Filing 25-1, Aff. Mrozek ¶ 9.)

9.      On or about February 25, 2016, Premier executed and delivered to Marco a bill of sale related to the assets purchased by Marco from Premier.  (Filing 25-1, Aff. Mrozek ¶ 10.)  That same date, eFrame dissolved after it "surrendered all of its assets to its largest creditor."  (Filing 51, Answer of eFrame ¶¶ 2, 13.)

10.      At the time the Agreement was executed, Marco had no agreements in place with the counter parties to the customer contracts, had no ability to compel the counter parties to the customer contracts to do business with Marco, and had no guarantees that the counter parties to the customer contracts would do business with Marco or otherwise agree to an assignment of their specific contract to Marco.  In fact, 40 percent of the customer contracts have been canceled or are pending cancellation by the counter parties as of May 2016. (Filing 25-1, Aff. Mrozek ¶ 11.)

11.      At no time has Marco entered into any contract with eFrame, including for the purchase or transfer of assets, assumption of liabilities, or other acquisition of eFrame as a going concern.  (Filing 25-1, Aff. Mrozek ¶ 12.)

12.      At no time did Marco take over, acquire, lease, or otherwise occupy any physical location owned or utilized by eFrame. (Filing 25-1, Aff. Mrozek ¶ 14.)

13.      Out of approximately 30 eFrame employees employed in June 2015, Marco temporarily hired 12 (none of whom are supervisors), and ultimately retained only 7 following the transaction between Marco and Premier.  Those employees work in Marco facilities, under Marco (non-eFrame) management, and are performing work on behalf of Marco's business generally, not their eFrame jobs.  One of the former eFrame employees works as a technical writer for projects affecting all of Marco, one performs purchasing and miscellaneous operations duties, and five work at the Marco

Support Desk serving all customers who purchase Marco's services. (Filing [25-1](), Aff. Mrozek ¶ 15.)[1]

14.    At no time did Marco retain, hire, or employ plaintiff Bartunek. (Filing [25-1](), Aff. Mrozek ¶ 16.)

15.    During the diligence period leading up to Marco's transaction with Premier, a lien search generally revealed the existence of lawsuits pending against eFrame, including plaintiff Bartunek's lawsuit against eFrame. (Filing [25-1](), Aff. Mrozek ¶ 17.)

16.    Plaintiff Bartunek filed his first amended complaint adding Marco and Brandon Nyffeler on April 13, 2016. (Filing [8]().)

## B.    *Standard of Review*

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[1]Plaintiff objects to this fact, stating in his brief that because Marco did not provide names of its employees who came from eFrame, he cannot determine whether Marco actually hired eFrame supervisors or not. (Filing [36 at CM/ECF p. 4]().) Plaintiff's "objection" is not supported by any affidavit, declaration, or authenticated evidence. Therefore, this fact is undisputed for purposes of Marco's motion for summary judgment. *See* [NECivR 56.1](b)(1) ("The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies . . . ."); [NEGenR 1.3](g) ("Unless stated otherwise, parties who proceed pro se are bound by and must comply with all local and federal procedural rules.").

material fact and that the movant is entitled to judgment as a matter of law." *Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). After the movant has demonstrated the absence of a genuine issue of material fact, the nonmovant must respond by submitting evidence that sets out specific facts showing that there is a genuine issue for trial. *Jackson*, 643 F.3d at 1085. "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Jackson*, 643 F.3d at 1085 (quoting *Torgerson*, 643 F.3d at 1042).

## C.    *Analysis*

It is undisputed that Bartunek was never employed by Marco and that Bartunek did not bring an administrative action against Marco alleging age discrimination with either the NEOC or EEOC.  Rather, Bartunek filed his discrimination complaint with the NEOC only against eFrame, LLC. (Filing 36-3 at CM/ECF p. 3.)  Bartunek contends that Marco is liable for his claims against eFrame under the theory of successor liability.

> The premise of successor liability is that "[f]ailure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy." [*EEOC v. MacMillan Bloedel Containers, Inc*., 503 F.2d 1086, 1091 (6th Cir. 1974).] The leading approach to resolving questions of successor liability remains the Sixth Circuit's decision in *MacMillan*, where the court set forth a nine-factor test to be applied on a case-by-case basis. 503 F.2d at 1094. These considerations include: (1) whether the successor company had notice of the charge; (2) the ability

of the predecessor to provide relief; (3) whether there has been a substantial continuation of business operations; (4) whether the new employer uses the same plant; (5) whether the new employer uses the same or substantially the same work force; (6) whether the new employer uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the new employer uses the same machinery, equipment, and methods of production; and (9) whether the new employer produces the same product. *Id.*

*Prince v. Kids Ark Learning Ctr., LLC*, 622 F.3d 992, 995 (8th Cir. 2010) (Title VII case). However, these factors are not "in themselves the test for successor liability. . . . The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy." *Id.* at 995 (internal quotation marks and citation omitted).

In *Prince*, the court of appeals held that the district court did not abuse its discretion in refusing to apply successor liability in an employee's Title VII action against her employer and the company that took over her former employer's operations. The court noted that several factors favored the imposition of successor liability—such as the new employer having notice of the plaintiff's discrimination charge against her former employer and 50 percent of the former employer's staff going to the new employer to perform the same jobs in the same working conditions with the same equipment and vehicles used by the former employer. Nevertheless, the court of appeals found that several other factors supported the district court's decision to *not* impose successor liability on the new employer—such as the facts that the former owner was in bad health, the former employer was on state probation for mismanagement, the former employer was going to lose its operating license notwithstanding the alleged discriminatory conduct, the new employer had new management and financing, and there was no connection between the formation of the new business and the plaintiff's claim of discrimination.

9

Application of the *MacMillan* factors to this case does not support subjecting Marco to successor liability under Title VII for the allegedly unlawful employment practices of eFrame. While it is true that eFrame presumably cannot pay any judgment obtained against it because it is dissolved and Marco is in a position to provide relief to Bartunek since it is an ongoing business, the remaining *MacMillan* factors weigh in Marco's favor.

During the diligence period leading up to Marco's February 25, 2016, transaction with Premier, a lien search generally revealed the existence of lawsuits pending against eFrame—including Bartunek's lawsuit against Marco—but there is no evidence that Marco knew the substance of Bartunek's claims against eFrame until Marco was added as a defendant in this case on April 13, 2016. Marco did not take over, acquire, lease, or otherwise occupy any of eFrame's physical locations; Marco temporarily hired 12 non-supervisory eFrame employees out of eFrame's 30 total employees, ultimately retaining only 7 of them after the Premier-Marco transaction; and the 7 former eFrame employees work in Marco facilities, under Marco management, and are performing work on behalf of Marco's business generally, not their eFrame jobs.

Further, the Asset Purchase Agreement between Marco and Premier Bank recites that Marco was to acquire a portion of eFrame's assets from Premier after eFrame defaulted on its 2012 loan from Premier, which had a security interest in eFrame's assets. Marco did not enter into a contract with eFrame for the purchase or transfer of its assets, assumption of its liabilities, or other acquisition of eFrame as a going concern—rather, Marco purchased only a portion of eFrame's assets from Premier in the form of customer contracts and three website addresses—negating the existence of a predecessor-successor relationship between eFrame and Marco. Significantly, the Agreement specifically states that Marco was to be free from any of eFrame's debts, obligations, responsibilities, or liabilities—whether known or unknown—with respect to employment. There is no evidence this transaction was some sort of sham designed to evade employment discrimination law, as there is no

10

evidence whatsoever of a connection between the formation of Marco Technologies, LLC, and Bartunek's claim of discrimination.

Thus, the great majority of the *MacMillan* factors militate against subjecting Marco to successor liability under Title VII for the allegedly unlawful employment practices of eFrame as against the plaintiff, and this conclusion is buttressed by the language of the Asset Purchase Agreement between Marco and Premier Bank. *Nutt v. Kees*, 796 F.3d 988, 993 (8th Cir. 2015) (assuming doctrine of successor liability applies in ERISA cases, district court improperly weighed the equities in finding successor liability when defendant lessor of successor entity did not negotiate directly with seller regarding purchase price, terms, and potential liability, lessor was not party to unlawful practices of predecessor, and lessor operated business without significant connection to culpable parties; the fact that lessor simply continued operations did not create liability because "[i]f the doctrine of successor liability required no more than subsequent operation, the doctrine inevitably would discourage the free transfer of assets to their most valuable uses"); *Whitmore v. O'Connor Management, Inc.*, 156 F.3d 796, 799 (8th Cir. 1998) (rejecting plaintiff's request for something "analogous to successor liability" under Title VII because plaintiff's argument suffered from several flaws, "not the least of which is the fact that there was no sale of a business creating a predecessor-successor relation between the two corporations"); *Dominguez v. Hotel, Motel, Restaurant & Miscellaneous Bartenders Union, Local No. 64*, 674 F.2d 732, 733 (8th Cir. 1982) (per curiam) (refusing to impose successor liability in discrimination case because defendant acquired predecessor's assets at foreclosure sale without any "direct or indirect knowledge" of plaintiff's pending discrimination allegations, even though successor used same business name and provided substantially same services with same physical plant and equipment and with substantially same work force); *see also Korlin v. Chartwell Health Care, Inc.*, 128 F. Supp. 2d 609, 614 (E.D. Mo. 2001) (holding that privity between predecessor and successor employer is necessary for successor liability; "it would not be equitable, nor consistent with Supreme Court and Eighth Circuit precedent, to hold [alleged successors] liable for [predecessors'] discriminatory employment practices when there

11

was no privity, nor sale of assets, between the predecessors and successors"); *Greater Kansas City Laborers Pension Fund v. Al Muehlberger Concrete Co., LLC.*, No. 4:14-CV-229, 2015 WL 6457295, at *2 (W.D. Mo. Oct. 26, 2015) (denying summary judgment when parties disagreed and presented conflicting evidence regarding factors used to determine whether successor liability was proper, such as whether entities shared the same owner, significant number of employees, and same type of work).

Because Bartunek's only basis for including Marco in this lawsuit is that Marco is subject to successor liability for eFrame's allegedly unlawful employment discrimination against Bartunek,[2] and because I have found that Marco is not subject to such successor liability, Marco's motion for summary judgment must be granted.

Accordingly,

IT IS ORDERED:

1.    Defendant Nyffeler's motion to dismiss (Filing 16) pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and defendant Nyffeler is dismissed from this case;

2.    The plaintiff's motion to introduce evidence (Filing 52) is denied, and the materials attached to such motion shall not be considered;

3.    The motion for summary judgment (Filing 23) filed by defendant Marco Technologies, LLC, is granted, and Marco is no longer a party to this case; and

---

[2]See Filing 36, Pl.'s Br. Opp'n Mot. Summ. J. at CM/ECF p. 8 ("Marco is a defendant in this lawsuit not because the Plaintiff claims that Marco committed Age Discrimination against the Plaintiff, but because Marco is a successor of interest for eFrame . . . .").

4.      Judgment as to defendants Nyffeler and Marco Technologies, LLC, shall be withheld pending the resolution of this case as to the remaining defendant, eFrame, LLC.

DATED this 6th day of October, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

13